Philip Meyers v. Commissioner.
Meyers v. Commissioner
Docket No. 1063.
United States Tax Court
1944 Tax Ct. Memo LEXIS 247; 3 T.C.M. (CCH) 468; T.C.M. (RIA) 44167; May 17, 1944
*247 Lester A. Jaffe, Esq., 1616 Union Central Bldg., Cincinnati, O., for the petitioner. Lawrence R. Bloomenthal, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined deficiencies of income tax for the years 1939 and 1940 in the respective amounts of $14,112.89 and $11,636.41. Not all of the adjustments are in dispute. Petitioner has conceded the correctness of some of the adjustments and respondent has agreed that one of the items in the notice of deficiency should be eliminated. The only issue remaining is whether the income of two separate trusts created by petitioner for the benefit of his two minor children is taxable to him. Most of the facts have been stipulated. Petitioner filed his returns with the collector for the first district of Ohio. Petitioner resides in the Village of Wyoming, Hamilton County, Ohio. On November 2, 1938, he executed an irrevocable trust indenture for the benefit of his son, Philip Meyers, Jr. He named himself trustee and delivered to himself as trustee 20 shares of the preferred capital stock of The Princess Garment Company, now known as Fashion Frocks. Inc. The indenture provided that the *248 net income was to be accumulated and added to the principal until the beneficiary attained the age of 21 years, at which time he was to receive the net income from the trust. When the beneficiary reached the age of 30 years, the principal and any accumulated and undistributed net income thereof was to be paid over to him and the trust was to terminate. During the minority of the beneficiary, the trustee was authorized to pay over to such beneficiary such sums as the trustee in his uncontrolled discretion might consider proper. The indenture contained the provision that the grantor was not relieved "from his obligation, in whole or in part, to maintain and support said Philip Meyers, Jr., during his minority." In the event the beneficiary died before reaching the age of 30 years, the principal together with the accumulated and undistributed income thereof was to go to the beneficiary's lawful issue then surviving, per stirpes, and if there be no lawful issue then surviving, it was to pass to his sister, Lynne Meyers, or if she were not living at that time then to her lawful issue then surviving, per stirpes, and in default thereof to the next of kin of the grantor, determined *249 by the laws of descent and distribution then in effect in Ohio. Under the indenture, the trustee was authorized to administer and manage the trust as follows: "Trustee shall have full power and authority to retain any investments, securities or property in the trust estate in the same form as received by him; to sell, transfer, assign, convey, exchange, lease, perpetually, or for a term of years, with or without privilege of purchase, pledge, mortgage, or otherwise dispose of, or encumber any investments, securities, or property held by him, without appraisement, valuation, advertisement, notice or court order, at public or private sale, on such terms as he may deem best, and no purchaser or transferee need look to the application of the purchase money. Philip Meyers, individually, may receive loans from the trust estate and may make purchases from, and sales to said trust estate. Trustee shall have full power and authority to invest and reinvest any moneys in the trust estate in such securities, investments or property as he may deem best, without reference to the rules of any court or the statutes of any state governing investments of trustees. Trustee shall have full power and *250 authority to improve, insure, manage, remove buildings or other improvements from, and otherwise deal with any real estate that may be or become a part of the trust estate, in his absolute discretion; to exercise any right or option of subscription, or otherwise, attached or which may at any time belong or be given to the holders of any securities or investments in the trust estate; to join in any plan of lease, mortgage, consolidation, exchange. reorganization or foreclosure of any corporation or other form of business organization in which Trustee may hold stocks, bonds, or other forms of investments, and to take and hold any securities or investments issued upon such plan, and to pay any assessments involved therein; and to sign consents and to give proxies. "Trustee shall have full power and authority to value any securities, investments or property in the trust estate for the purpose of determining the proportionate shares of the respective beneficiaries or of making distribution, in whole or in part, and shall have power to make distribution in kind. Any values placed by Trustee on the securities or property distributed or remaining in the trust shall be final, binding, and *251 conclusive on all persons whomsoever. "Trustee is authorized to borrow such sums of money as may be required for the purposes of the trust and to secure the loan by a pledge or mortgage of all or any part of the trust property and to execute, plain or collateral notes, or other evidences of indebtedness. Persons or corporations advancing money to the Trustee need not inquire into the necessity, expediency or propriety of such loan, nor see to the application of the money so advanced. Trustee shall not be required to file any account in any court nor shall Trustee be liable for any loss or shrinkage in value of the trust estate, or any part thereof, so long as Trustee acts in good faith and in accordance with the terms hereof. "During the continuation of this trust, the Trustee shall have the right, in his uncontrolled discretion, to receive and accept additions to the principal of this trust from Philip Meyers or from any other person, firm or corporation; and if and when so received, such property shall become part of the corpus of this trust and shall be subject to all of the terms and conditions hereof. "Trustee shall have full power and authority to invest any moneys in the *252 trust estate, principal or income, in life insurance on the life of Philip Meyers, Jr. and/or on the life and/or lives of his parents, or either of them, and/or on the life of any other member of his family and in connection therewith to apply for any such life insurance, to pay premiums therefor, to surrender any of said life insurance policies, to convert or exchange any of said policies into or for other policies and to exercise, as owner of said insurance policies, all rights, options and privileges thereunder. Trustee shall have full and complete authority to collect and receive any and all amounts payable under any such policies and his receipt therefor shall be a full and complete acquittance to the insurer who shall be under no obligation to see to the application of the insurance moneys by Trustee." The indenture also contained a spendthrift clause authorizing the trustee to disregard any assignment by the beneficiary of either the principal or the income of the trust. The grantor retained the right to amend the trust during his lifetime but he could not effect any change in the dispositive provisions of the trust. On November 3, 1938, petitioner created a trust for the *253 benefit of his daughter, Lynne Meyers, which was in all respects similar to the trust created for his son, Philip Meyers, Jr., except for the difference in names. At the time of the creation of the trusts, Philip Meyers, Jr. was 6 years of age, and Lynne Meyers was of the age of one year. The preferred capital stock of The Princess Garment Company, which was the corpus of each trust, was non-voting except in the case of default for the payment of dividends of two years, whether successive or not. During the taxable years there had been no default of such payment of dividends. During 1938, Mitchell Meyers, father of petitioner, being the owner of shares of class B stock of The Princess Garment Company, made an outright and unconditional gift to each of the aforementioned trusts of three shares of such class B stock. Such gift to each of said trusts was effectuated by the delivery by Mitchell Meyers to the trustee of each of said trusts of certificates of said class B stock issued in the name of Mitchell Meyers and duly endorsed by him, whereupon two new certificates for three shares each in the name of the trustee for each of said respective trusts were issued by The Princess Garment *254 Company. In September 1940, petitioner transferred 100 shares of The Princess Garment Company class B stock to each of the aforementioned trusts. These transfers of 100 shares each were of class B stock of said company after the shares had been split-up on the basis of 20 new class B shares for one old class B share. Each of said trusts was, therefore, in September 1940, the owner of 20 shares of The Princess Garment Company preferred stock and the owner of 160 shares of The Princess Garment Company new class B stock, of which latter shares 60 were given to each trust by Mitchell Meyer, father of petitioner, and 100 shares were given to each trust by petitioner. The issued and outstanding capital stock, before the aforementioned split-up of class B shares, was as follows: 100 shares of preferred stock 100 shares of class A stock 150 shares of class B stock After the said split-up, the amount of the issued and outstanding class B shares was 3,000 instead of 150. Fiduciary returns for the taxable years were filed by the two trusts and the taxes shown due by these returns were paid. In the calendar year 1939, out of the aggregate gross income of the said two trusts amounting to *255 $8,400, $2,400 represented dividends on the preferred stock transferred to said trusts by petitioner and $6,000 represented dividends on class B stock theretofore transferred to said trusts by petitioner's father. In the calendar year 1940, out of the aggregate gross incomes of the said two trusts amounting to $8,832.80, $2,400 represented dividends on the preferred stock transferred to said trusts by petitioner, $4,000 represented dividends on the class B stock transferred to said trusts by petitioner, and $2,400 represented dividends on class B stock transferred to said trusts by petitioner's father. [1]
During the year 1939, none of the income received by either of said trusts was expended in the payment of any premiums on life insurance policies on the life of petitioner. During the year 1940, out of the income of the trust for the benefit of Philip Meyers, Jr., $539.25 was expended in the payment of a premium on a life insurance policy, owned by said trust, on the life of petitioner; and a like amount was paid during the year 1940, out of the income of the trust *256 for the benefit of Lynne Meyers, for a similar policy, owned by said trust, on the life of petitioner. These two policies were issued by The Prudential Life Insurance Company of America in October 1940, and thereupon became the property of said trusts, which had all incidents of ownership therein. After the payment of taxes chargeable to the trust for the benefit of Philip Meyers, Jr., all of the income received by said trust during the year 1939, and the remaining income received by said trust for the year 1940 (after the payment of $539.25 for premium on life insurance policy on the life of petitioner as above set forth) was used as follows: to pay premiums for life insurance owned and originally issued to said trust on the life of Lucille G. Meyers, mother of Philip Meyers, Jr., mounting during 1939 to $472, and during 1940, to $849.60; the balance of said income was used in part to pay premiums on policies of life insurance, originally issued to, and owned by said trust, on the life of Philip Meyers, Jr., a part of said income was used to purchase United States bonds, owned by said trust, and the balance of the income was accumulated. After the payment of taxes chargeable to *257 the trust for the benefit of Lynne Meyers, all of the income received by said trust during the year 1939, and the remaining income received by said trust for the year 1940 (after the payment of $539.25 for premium on life insurance policy on the life of petitioner, as above set forth) was used as follows: to pay premiums for life insurance owned and originally issued to said trust on the life of Lucille G. Meyers, mother of Lynne Meyers, amounting during 1939 to $472 and during 1940 to $849.60; the balance of said income was used in part to pay premiums on policies of life insurance, originally issued to, and owned by said trust, on the life of Lynne Meyers, a part of said income was used to purchase United States bonds, owned by said trust, and the balance of the income was accumulated. Except for the stock of The Princess Garment Company owned by the two trusts for the benefit of Philip Meyers, Jr. and Lynne Meyers, respectively, all of the issued and outstanding capital stock of said The Princess Garment Company has been for many years, including the years 1939 and 1940, and is now, owned by Mitchell Meyers, father of petitioner and founder of said company, and by his children, *258 including this petitioner, and by members of the respective families of said children. During each of these years, petitioner was vice-president of The Princess Garment Company. During 1939, petitioner owned 5 percent of the issued and outstanding preferred stock of The Princess Garment Company and 43 1/3 percent of the issued and outstanding class B stock of said company. During 1940, petitioner owned 5 percent of the issued and outstanding preferred stock of The Princess Garment Company and his holdings of class B stock decreased so that as of December 31, 1940, petitioner owned only 26 2/3 percent of the issued and outstanding class B stock of said company. During neither of these years was petitioner the owner of any class A stock of the company. Petitioner, as trustee of each of said trusts, has never voted any of the stock of The Princess Garment Company owned by said trusts at any stockholders' meeting, a quorum being present by stockholders in person, other than the trustee for each of said trusts. Petitioner has never borrowed any moneys from either of said trusts nor made any purchases of securities or other assets from said trusts nor sold any securities or other assets *259 to said trusts. On December 1, 1942, petitioner resigned as trustee of each trust and the First National Bank of Cincinnati was substituted as trustee and is now acting in that capacity. Petitioner in creating the trusts intended to provide for the financial security of his children. The stock was placed in trust because of the minority of such children. At the time of the creation of the trusts, petitioner's net worth was approximately $750,000 and the aggregate value of all of the assets transferred by him in 1939 and 1940 to each trust was approximately $24,000. During the taxable years the trust indentures and the assets of the trusts were kept in a safe deposit box of The First National Bank of Cincinnati separate and apart from the safe deposit box containing petitioner's personal assets. During these years, separate bank accounts were kept for each trust in the Central Trust Company of Cincinnati. Economic gain was not realized or realizable by petitioner under the provisions of the trust indentures. The rights and powers reserved by petitioner as grantor-trustee under the indentures did not constitute the equivalent of ownership of the trust corpus or income. Opinion *260 The only question for determination in this proceeding is whether the entire income of two separate trusts created by petitioner for the benefit of his two minor children is taxable to him under sections 166, 22 (a), or 167 (a) (3) of the Internal Revenue Code. Respondent defends his action of taxing the entire trust income to petitioner on two grounds. His first contention is that the income of these trusts is taxable to petitioner under sections 22 (a) and 166 of the Code because the trust indentures provide that the grantor-trustee may receive loans from the trusts and may make purchases from or sell to the trusts. His second contention is that the trust income is taxable to petitioner under section 167 (a) (3) of the Code since it might have been used during the taxable years to pay premiums on life insurance on petitioner's life. Section 166 of the Code taxes trust income to the grantor, where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested in the grantor or in any person not having a substantial adverse interest in the disposition of the income or the corpus of the trust. In this proceeding the trusts are irrevocable and *261 under no circumstances can petitioner ever recall any part of the corpora of the trusts. Respondent argues, however, that since the indentures are silent as to the terms upon which petitioner may receive loans or make purchases from or sales to the trusts, there is a possibility that petitioner may secure the assets of the trusts for a nominal consideration. He contends that this power is substantially equivalent to a power to revest the corpus in the grantor, relying upon Chandler v. Commissioner, 119 Fed. (2d) 623; Ellis H. Warren, 45 B.T.A. 379, affd., 133 Fed. (2d) 312, and David M. Heyman, 44 B.T.A. 1009. It should be noted at the outset that there is no provision in the trusts giving the grantor-trustee the right, in his absolute discretion, to determine the price at which the assets might be purchased from or sold to the trusts. Under well established rules governing the conduct of trustees and other fiduciaries, any transactions between petitioner and himself as trustee would be subject to the closest scrutiny. In Restatement of the Laws of Trusts, volume *262 1, section 170, and comments thereto, the rule as stated at pages 440, 441, is as follows: By the terms of the trust the trustee may be permitted to sell trust property to himself individually, or as trustee to purchase property from himself individually, or to lend to himself money held by him in trust, or otherwise to deal with the trust property on his own account. The trustee violates his duty to the beneficiary, however, if he acts in bad faith, no matter how broad may be the provisions of the terms of the trust in conferring power upon him to deal with the trust property on his own account. It is a general principle that a trustee must act with the most scrupulous good faith. In all matters relating to the trust, he must act solely for the benefit of the beneficiary. A trustee will not be permitted to manage the affairs of his trust or to deal with the trust property so as to gain any advantage, either directly or indirectly, for himself. See also Scott on Trusts, volume 2, section 170.25. Bogert on Trusts, volume 3, sections 484 and 543. Applying these rules to this proceeding, petitioner in transactions with the trusts would be required to buy and sell at a fair price and *263 to obtain loans on ample securities with a fair rate of interest. The trust instruments also provide that the trustee should not be held liable for any loss or shrinkage in the value of the trust estate or any part thereof as long as he acted in good faith. Under this provision, we think that there can be little doubt that petitioner would be liable to the beneficiaries if he attempted to secure the trust assets for a nominal consideration. The cases relied upon by respondent are entirely distinguishable upon their facts. In the Chandler case, supra, the grantor, who was not the trustee, expressly reserved the right to require the trustee to buy from and sell to the grantor at the grantor's own price and the trustee was to be relieved from all liability for acting in accordance with the directions of the grantor. The court held that under these circumstances the trustee owed no duty to the beneficiaries since its powers were limited by the terms of the agreement and that the grantor "did not intend to impose upon himself fiduciary restraints enforceable by the trust beneficiaries." Here, since the grantor was trustee, fiduciary restraints would be enforceable by the beneficiaries, *264 and he would be required to administer the trusts solely in their interests. In Warren v. Commissioner, supra, in addition to the powers to purchase and sell to the trust estate, there was the additional power whereby the grantor-trustee could either accumulate or distribute the trust income. In that case also, since it was affirmed under the doctrine of R. Douglas Stuart, 317 U.S. 154, the trust income could be used for the support and maintenance of the taxpayer's wife and minor child. In David M. Heyman, supra, the grantor reserved the right to buy and sell trust property at his own price, to speculate and maintain margin accounts with the trust assets, and to invest trust property with no restrictions whatsoever and with no liability for loss. Under these circumstances it was held that these powers constituted the substantial equivalent of the power to revest. In this proceeding, petitioner as trustee was required to administer the trusts for the exclusive benefit of his children. In that administration, he was forbidden to profit personally. Under the circumstances the power given to him to buy from and sell *265 to the trusts was not such a power substantially equivalent to a power to revest and it is held that the income of the trusts is not taxable to petitioner under section 166 of the Code. Respondent also contends that petitioner is taxable under the broad provisions of section 22 (a) of the Code under the doctrine enunciated in Helvering v. Clifford, 309 U.S. 331. Under the rule established in that case, the applicability of section 22 (a) depends upon whether, after creating the trusts, the petitioner retained such incidents and attributes of ownership that he continued to possess the economic enjoyment of the property or the fruits of such property placed in trust. The determination of the question depends upon whether economic gain was realized or realizable by petitioner through control of the trusts, so complete that it must be said he is the owner of its income. Helvering v. Stuart, 317 U.S. 154. Respondent contends that such economic gain was realizable by petitioner from the broad powers of management and administration given to him including the right to obtain loans from the trusts and to purchase from or sell *266 to the trusts. However, in W. C. Cartinhour, 3 T.C. 482, we held that "the power to manage trust property, however unlimited may not operate to bring the grantor within the provisions of section 22 (a) if by such power he cannot derive any economic benefit therefrom except whatever advantages he may gain by virtue of the statutory provisions which permit the creation of trusts or estates." As hereinbefore discussed, petitioner as trustee could not purchase trust property for less than a fair consideration nor could he borrow money from the trusts without ample security or at less than a fair rate of interest. In his dealings with the trust property, he was bound by a high standard of conduct, and by the terms of the indentures, he was personally liable for any losses to the trusts occasioned by bad faith on his part. Under the circumstances, petitioner could not derive any economic benefit from these powers. As pointed out in George H. Whiteley, 2 T.C. 618, 622, no single factor is determinative in deciding the taxability of a trust under section 22 (a). That decision requires a nice balancing of the powers and rights *267 granted to the beneficiary and those retained by the grantor-trustee to the end of determining where lies the real right of ownership of the income. When it is considered that the trusts in this proceeding were irrevocable; that petitioner retained no right to change any of the dispositive provisions or to receive any part of the trust income or corpus; that the trusts were long-term trusts with no power in the petitioner to terminate them; that none of the trust income could be used to relieve petitioner of his parental obligation of support; that a substantial part of the trust income came from corpus delivered to the trusts by petitioner's father; that the voting power of the stock which constituted the corpus of the trusts was unimportant since no question of corporate control was involved; and that the grantor as trustee was required to and has in fact administered the trust property for the exclusive benefit of his children, it cannot be said that the "bundle of rights" which the grantor-trustee retained were the equivalent of ownership contemplated by the Clifford case, supra. Commissioner v. Katz, 139 Fed. (2d) 107; Commissioner v. Armour, 125 Fed. (2d) 467; *268 Suhr v. Commissioner, 126 Fed. (2d) 283 [42-1 USTC; Jones v. Norris, 122 Fed. (2d) 6; Commissioner v. Branch, 114 Fed. (2d) 985; Helvering v. Palmer, 115 Fed. (2d) 368. It should also be noted that although the beneficiaries of the trusts were petitioner's minor children, this did not result in a "temporary reallocation of income within an intimate family group," since no income was to be distributed until the beneficiaries became 21 years of age. Cf. Helvering v. Clifford, supra.It is therefore held that the income of the trusts is not taxable to petitioner under section 22 (a) of the Code. Respondent's last contention is that because the income of the trust might have been used to pay premiums on life insurance on petitioner's life, the entire net income is taxable to petitioner under section 167 (a) (3)[2] of the Code, regardless of whether it was in fact so used and regardless of the source of such income. Petitioner concedes that under the provisions of section 167 (a) (3) of the Code, that portion of the income of the *269 trusts is taxable to him which was used to pay the premiums on the trusts' insurance policies on his life. He denies, however, that the balance of such income is taxable to him. The same contention has been made by respondent in two recent cases before this Court and has been decided adversely to him. See Joseph Weil, 3 T.C. 579; Lorenz Iverson, 3 T.C. 756. In the Iverson case, the Court said: * * * The respondent argues that the petitioner is taxable upon the entire net income of the *270 trust since the excess income for any year not used to pay premiums could have been so used during the following year and since additional policies could have been transferred to the insurance trust. We do not think that this is a proper construction of the statute. Section 167 (a) (3) makes a grantor of a trust taxable upon only such part of the income as "may be, applied to the payment of premiums upon policies of insurance on the life of the grantor." We think that this means such part of the income as under the terms of the trust agreement may be applied upon the current year's premiums on policies outstanding. See Genevieve F. Moore, 39 B.T.A. 808; Frank C. Rand, 40 B.T.A. 233; affd., 116 Fed. (2d) 929; certiorari denied, 313 U.S. 594; Commissioner v. Mott, 85 Fed. (2d) 315; Corning v. Commissioner, 104 Fed. (2d) 329. Under the terms of the trust agreement the income of the Mayer-Dixon Trust was to be used only for the payment of premiums on policies of insurance on petitioner's life held in the insurance *271 trust. We think that the excess of the trust income over the amount of such premiums is not taxable to petitioner. Here, during 1939, none of the income of the trusts was used to pay premiums on policies insuring petitioner's life. During 1940 each trust applied for and received a policy of insurance on petitioner's life from the Prudential Life Insurance Company of America, which thereupon became the property of the trusts. Petitioner concedes that he is taxable upon the amounts paid by the trusts for premiums on the two insurance policies which were taken out in 1940 upon his life, to wit, $1,078.50, the total of two premiums of $539.25, each. As far as the facts show, the trusts did not own any other policies on the life of petitioner, in the taxable years. Under the trust indentures, the trustee could only apply trust income to the payment of policies owned by the trusts. Petitioner is taxable upon the actual premiums paid by the trusts for insurance on his own life but is not taxable upon the trust income in excess of that amount. Since both petitioner and respondent have conceded adjustments in the notice of deficiency, accordingly, Decision will be entered under Rule 50. *272 Footnotes
1. These figures have been taken from the stipulation. The reason for the discrepancy of $32.80 is not shown.↩
2. SEC. 167. INCOME FOR BENEFIT OF GRANTOR. (a) Where any part of the income of a trust - * * * * *
(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (o), relating to the so-called "charitable contribution" deduction); then such part of the income of the trust shall be included in computing the net income of the grantor.↩